First case this morning, and I think the appellant is going to appear by Zoom, is Resort Center Associates v. Regan, 21-4150. Good morning, Your Honors, may it please the Court, my name is Kenneth Melrose, I represent Appellant Resort Center Associates. Your Honors, traversal here is appropriate because, construing the allegations of the proposed amended complaint in the light most favorable to the plaintiff, the development agreement at issue in this case did not expire based on its plain language, and it was an dismissed the case on a finding that it did expire. RCA's contention that the development agreement at issue with Summit County did not expire is supported by the plain language of the agreement at Section 10.4, which indicates that if RCA developed any phase of the project within five years, the rights to develop the project would be vested and ran with the land. Well, that's different, Counsel, and the district judge did not disagree with that. The point being, I think, that the Court was making is that the five-year period, I mean, the math is 2006 to 2011, that's five years it expired, but the Court acknowledged that any rights that had been vested would certainly not terminate. I don't know that you're saying anything different than the district court had said. Well, I think so. I appreciate the analysis, Your Honor, and I think it is a little bit different, and here's how RCA understands it. RCA understands that the contract itself is the source of the vested rights. The number of provisions in the contract indicate that it will run with the land, the contract will bind successors to the land, and so the source of the vested rights is the contract itself overall, and so you can't really parse them out to say, well, the contract itself expired because the contract itself transmutes into the source of these vested rights, and it dictates, because without it, where do you determine what vested rights exist? They're all contained within the contract. Counsel, may I ask you, what are the vested rights that RCA contends exist? The chief issue would be all of the provisions of the contract itself, the development agreement that govern the right to develop the project, and the chief one at issue here is the ability to make an administrative amendment to a plat controlling the lot layout, and to tender that for approval. So the issue here is, and this is another finding in the district court, the district court found that the 2018 submission of a revised or amended plat for phase two of the project did not constitute an administrative amendment. The court found that that was basically a non-conforming application that was made, and part of that is because the contract has lapsed. There's no right to that administrative amendment. RCA contends that the contract, the vested rights it was entitled to, govern two types of amendments. One is an administrative amendment, one is a substantial amendment, and in the case where it simply made changes to the lot layout, not the densities, not the amount of open space in the project, just the layout of the lots to accommodate an EMX track and a pond, that that was an administrative amendment, and that it was entitled to approval thereof. I don't mean to interrupt your train of thought, counsel, but just a really brief interjection. Do you acknowledge that under paragraph 4.3 that the 2018 proposed plat didn't conform with paragraph 4.3 because it was not consistent with the specific conditions and guidelines described in the project plan book of exhibits? Now, you argue that the 2018 proposed plat had only minor adjustments than what had been approved in the book of exhibits, but you would acknowledge that it did not strictly conform with what had been approved by Summit County, correct? Absolutely, Your Honor. Okay. And the reason being that the corollary to that is this administrative amendment process which contemplates that what you propose to build at the outset in your development agreement is not necessarily always going to be the exact same thing that gets built. And there's a lot of reasons for that. And in this case, it was the later construction of this BMX track and the pond that necessitated lot line changes. And the contract contemplates it. As long as you're not changing densities, changing open space, changing major things about the proposal, that that's acceptable, that that's a valid administrative amendment. Counsel, does your argument depend on our agreeing with you that the development agreement has not expired? This argument, well, that gets back to the vested rights. So this depends on finding that the contract itself is the source of the vested rights and that among those vested rights is this administrative amendment process. Yeah, so it's really a finding that RCA did develop. And when it did develop phase one, it vested its rights to go along and develop phase two and as a part of that seek this administrative amendment. So, moving on. Judge Morton has a question. Well, I want to go back to your amendment argument. And as I understand your argument, accepting your argument that there was an amendment or a proposed amendment, I would say, as I understand your briefing, you still suggest that that amendment needed to be accepted by the county. And I don't quite understand your argument as to how it was actually accepted. Yes, and thank you for that, Jodi. Once the amended plan and application were made in 2018, the county was compelled to do something. Why? It could, yes. Why? It was compelled under the code. Utah code annotated 1727A 509.5 dictates that these processes have to result in an action, either approval or deny. And that approval or deny has to happen with a reasonable speed or a reasonable amount of turnaround time. Sorry, the language is reasonable villages. And that didn't happen in this case, because despite repeated follow-ups from RCA, this 2018 plan was never expressly rejected, nor was it approved. And it wasn't until 2021, May of 2021, after commencement of this litigation, that the county then did reject that plan. But that wasn't within the reasonable amount of time. And so RCA's position is that the development agreement was breached by the failure to respond to the amended plan. So as I understand where we are from your argument, there was a five-year term. You acknowledged that it had expired, I think, other than for those rights that had vested. And the rights that had been vested were the approval of the proposed plan in 2006 that became impossible because of the walkway and the pond. And so then you say that because of this municipal provision that the county has to do something. They don't do anything. So presumably there's a breach of this municipal provision that you have to do something. But you acknowledge, in response to Judge Moritz's question, that they ultimately rejected the administrative amendment. So how do you win if we credit everything you've just told us? Because you did provide a nonconforming plat that did not conform to 4.3. You submitted a plat that was rejected. So there's no approval by anybody of the administrative amendment. So I don't understand how we can reverse, even if we credit what you've told us. Thank you for that, Your Honor. I appreciate that. The nonconforming plat was nonconforming within the scope of the ability to effect an administrative amendment. OK. And the county was obligated to have timely made a decision about whether to accept or to reject. And it did not reject until three years later, after the commencement of this litigation. And that's outside of the time frame dictated by the code. And this also gets to the next step, which is this administrative amendment was one that was done with the county's input, with communication from the county. Why does that matter? I know what you talk about, Mr. Lewis, in an email, and you say, well, it was with their input. But you just told us that they rejected the plat that you all had submitted in 2018. So why does it matter that it was done with the input of the county? They don't quarrel that it was done with the input of the county. It matters, Your Honor, because the bases that were articulated in this untimely letter from the county in 2021 are new and different bases that were not in effect. They were not at play at the time in 2018 when it was proposed. And Utah Code and 1727A509 basically says that the county does not get to piecemeal out its conditions or its rejections of an application. These were all new. The county had already said in the development agreement, if you do X, Y, Z, you're going to get approval. We did X, Y, Z plus the administrative amendment. And then three years later, they said, oh, but you didn't do D, F, E, and G. And so RCA's position is that that rejection really has no force of effect. And the breach occurred when the county opted to do nothing for those years following the submission of what RCA believes is the comporting 2018 plat. And I see that I'm nearly out of time here, Your Honor. I'll just turn quickly to the EPA claims in this case. Clearly, sorry, Your Honor, do you have a question? No. Oh, my apologies. Oh, sorry. Yes. Clearly, as to the EPA, the court should reverse the dismissal because the EPA did not properly and promptly remove RCA's property from Operable Unit 2 after the demonstration of multitudes of tests that indicated that the property was clear of contamination. Under CERCLA 42 U.S.C. section 9604A, the EPA has to have a reasonable basis to conclude that there is contamination or that there is threatened contamination of the property. And so for that reason— May I ask you just to specify, do you mean, when you say of the property, are you talking about the actual, your client's property? Isn't it the site that we're looking at or the reference point that we're looking at, the operable unit, contamination in the operable unit itself? There's undoubtedly contamination within the operable unit. OU2, it's called. However, my client's property rests on a geographically distinct area of OU2, and testing has shown that as far as the EPA's models about the flow of contamination across riverbeds and streams and irrigation in that area, this property was not subject to the contamination that other parts of the OU were. And from the outset, in 2007, the EPA's own testing reflected that. And RCA properly pled and supported its allegations that the property was free of contamination. And in this case, there was no reasonable basis to conclude that CERCLA ought to— And that never occurred in this case. And so there was no basis for CERCLA to apply to begin with because the testing that issue demonstrates it wasn't contaminated. And on top of that, once the testing came in, there was a duty to remove the property from this operable unit. And in 14 years, that hasn't happened. This situation is really kind of in the ambit of the Frey case, but it's much worse because Frey dealt with actual contamination and in a protracted period of investigation that never resulted in definitive times to accomplish the EPA sentence. So for that reason, RCA requests reversal of the dismissal of the claim against the EPA. Thank you. Okay, thank you. You're out of time. Did the rest of you have any questions? Okay, thank you. We'll hear from the appellees. And you are splitting your time, right? Yes, Your Honor. Do so at your own peril. Yes, sir. May it please the court, my name is Robert Stockman. I'm here on behalf of the EPA. With me at counsel's table is Ms. Cepernic who is representing Summit County. My plan is to aim for about eight minutes and to leave the remaining seven to Summit County subject to questions. I'll begin by discussing Section 113H, which bars the circle of claims against EPA at this time. And Canon, which we view as directly on point for this case. And then I'll address why Resort Center's arguments to the contrary, asking for sort of an exception, are legally wrong, practically impractical, and also factually incorrect. So, in enacting Section 113H, Congress sought to bar exactly this type of suit, along with many other types of suit, against EPA removal actions. It provides that no federal court shall have jurisdiction under federal law to review any challenges to removal actions selected under Section 104 of CERCLA. Subject to five limited and precise exceptions, none of which Resort Center claims apply here. The district court correctly found that EPA is engaged in a removal action selected under Section 104, because it is engaging in an engineering evaluation and cost analysis at Operable Unit 2 that includes soil sampling to determine the extent of contamination. That evaluation is a removal action under the plain text of CERCLA and this court's holding in Canon that found exactly that kind of analysis was a removal action. And Resort Center does not dispute that it seeks to challenge that action. It seeks to force EPA to remove its property from Operable Unit 2, which would have consequences for EPA's ability to test and study that area to determine the level of contamination and whether further actions need to be taken. And in Canon, this court specifically found that even when a plaintiff sought to speed up a CERCLA action, that constituted a challenge, and that is the other way of construing what Resort Center is seeking here. I would note Canon is also in line with numerous other precedents, such as Resort, Borehead, and McClellan, all of which we cite in our brief. Now, Resort Center attempts to distinguish all this because they allege their property is not contaminated, or under the terms of CERCLA, there was not a release of hazardous substances or threat of release of hazardous substances to their property. But that is incorrect as a legal matter. However, it presents numerous practical concerns, and it mischaracterizes the factual situation. 113H does not provide any exception, allowing property owners to come in and try to litigate precisely where the boundaries should be, and precisely whether their property has hazardous substances on it. The text of it reaches any challenges, and every court to consider it has found that it's broad and not subject to exceptions. Counsel, can I ask you a hypothetical question? Let's say I decide to go into the developing business, and I decide that I'm going to go locate a track here in Denver, and I'm going to develop a new residential area, a neighborhood, and the EPA says, Bob, you know, I think that there was some spillage of some oil, and so we're going to conduct a remediation. We're going to do an EE, whatever, environmental assessment. And under canon, as you point out, that would constitute a removal action. And this is in the year 2023. That year passes. The decade passes. My child, my 14-year-old, is now 63 like I am, and we're still waiting to hear from the EPA. And meanwhile, nobody can develop this. It just seems counterintuitive that this is a nondiscretionary obligation to do something to respond. At some point, is there never any jurisdiction when the EPA just fails to act over an inordinate period of time? So the bar applies when EPA is engaged in a removal action or remedial action under CERCLA. I think there can be fact questions about if EPA does nothing for long enough, is that still true? But that is very much not this case, and I think it's helpful to think about this case. First, EPA focused on the most contaminated area, which is Operable Unit 1. And it also focused on other sites which were residential at that time and needed immediate relief. Then it turned its attention to these other areas where there were substances released. And this is in the early 2000s. And it sought to get the mining company to clean it up and entered two administrative orders on consent with them, which is exactly how CERCLA is supposed to work. It's supposed to coordinate with the people who committed the CERCLA violations to clean it up. It was only in 2017 that EPA finally concluded the mining company wasn't doing an adequate job, and it turned to doing this. And it then began its engineering evaluation and cost analysis. So it hasn't been nearly as long a time as some cases. And I think it all turns on the facts to some extent. I wouldn't submit, for example, that EPA doesn't need to explain why things are taking a while or why the circumstances are that its removal action is ongoing. But here I think the facts show that EPA has been diligently moving forward on this site. There have been delays for a variety of reasons, but it is moving forward, and it is engaged in a removal action at this time. Does that call for jurisdictional fact-finding? And if so, do we have any jurisdictional fact-finding? Because your adversary is complaining about the lapse of time. Well, the district court found there was an ongoing engineering evaluation and cost analysis at Operable Unit 2 based on EPA's submission. And EPA explained, and that I think was a mixed finding. That was both a legal and factual finding. They have not contested that. They have not said that is not true. They have not said the evaluation is not ongoing. It is ongoing. There were samples taken this very year. EPA's plan is to finish that step of the removal action this year if all goes well. So that's the first part of my answer to you, which is that there is a removal action, and this is not a case like Frey where the Seventh Circuit specifically said there is no evidence that EPA is taking any specific action at this location at this time. And that's very different, right? I'd also say that EPA does work with developers and works with them to allow development to go forward. And, in fact, on this very site, Operable Unit 2, two developers have entered administrative settlements where EPA will oversee the property evaluation, and then they will determine what cleanup needs to occur before development can occur. And EPA is very open to continuing to hear from the resort center on those facts. That hasn't happened yet. There hasn't been such a settlement, but it's not as though EPA is not cognizant of this. And finally, CERCLA doesn't per se bar the development, right? It's not as though being in Operable Unit 2 means it's a matter of federal law. They can't develop. It is true that if they do develop, they might commit CERCLA violations, but it's not as though we're specifically saying you can't go forward because you're in Operable Unit 2. I'd also just like to point out, to save some time for Summit County, one problem with what they want is review of this before EPA has completed the evaluation, which means everyone is acting with less information than the scientific experts at EPA believe is appropriate for making this determination. Counsel, can I just interrupt you and just specify, it's the same question that I asked your opposing counsel. You're talking about the site, the Operable Unit 2. That's what we're interested in. So your position is even if RCA is correct that their property is not contaminated, that doesn't impact the EPA's authority to act here. Yes. I think in this case that is certainly the case. Now, you could imagine hypotheticals where you might have difficult things, but here EPA explained that it found hazardous substances in Operable Unit 2. RCA concedes they're there. It explained that because of irrigation, they might have potentially contaminated the uplands, which is why Resort Center's property is part of it. And I just do want to clarify one factual thing. If you look at Volume 3 of their appendix, pages 575 and 578, it acknowledges there are arsenic levels on this property that exceed residential screening levels, including the level they urge this court to adopt in their reply brief at page 14, and that this is likely due to irrigation. So the brief says there's no contamination, but their studies don't show that. So this isn't as factually difficult a case as it might look, and that's not our studies. That's their statements. But I would submit that if EPA is engaged in a removal action and has proven that, as it has here, the court, Section 113H, bars suits about the precise details of that removal action, because otherwise it would create a massive exception that could potentially really derail and defeat the very purposes of restricting jurisdiction here. So I apologize to Summit County for going long, and I will sit down. Thank you, Your Honor. We ask this court to refer. Oh, why don't you stop the clock for her? So she doesn't feel like she has to run up to the podium. May it please the Court. Dani Sepernich for Summit County, and I'll try to be brief here. The development agreement did expire by its own term. It includes an express five-year term, and while that does not mean that RCA doesn't have vested rights, that's a separate issue from whether or not the development agreement continues to exist today. And the court need not really reach that issue, however, because even if the agreement were still in place, neither the first proposed amended complaint nor the second proposed amended complaint alleged a breach of contract claim that would survive a motion to dismiss. Counsel, may I interrupt you? So if we assume that the development agreement has expired, the county's position is that RCA maintains vested rights that survive the expiration of the agreement. That's correct, Your Honor. What are those vested rights? They are to develop the property, Phase 2 of the property, in accordance with Section 4.3 of the development agreement, which incorporates the project book of exhibits that includes specific guidelines and design specifications. So if RCA, why isn't it a plausible breach of vested rights claim for RCA to plead that they have proceeded in accordance with? And then there's fact finding surrounding whether that's true or not. Today, counsel acknowledged that the 2018 plot is not consistent with and does not conform to the development agreement and the site rendering that's included in that project plan book of exhibits. We've compiled those in Addendum 2 for the court, and a comparison shows that there's a different configuration, lot layout, sizes of the lot, road layout that now includes a hammerhead, alternative hammerhead turnaround, and that it deviates significantly from the development agreement, which RCA has conceded here today. But have they conceded that it's not in accordance with? I mean, I think that's sort of we're debating what that means. Does it mean it has to be exact? I believe that they did concede that today, but it provides that it needs to be consistent with, and there are several deviations that are significant and would require, at the least, an administrative amendment to the site rendering that was included in that project book of exhibits, which has not occurred, and RCA has not alleged that that's occurred. RCA has pointed to emails from Sean Lewis, who is the county planner, but the development agreement is clear that only the community development director has the authority to make administrative amendments to the development agreement, assuming that agreement was still in place and in effect, and Section 10.8 of the development agreement confirms that no other official has the authority or that the county is waiving the requirement of who has authority to act on its behalf, and so Mr. Lewis, who is not the director, had no authority to approve an amendment, and a review of the email on which RCA relies, which controls over any contrary allegations in its proposed complaint, confirms that there was no approval of a proposed amendment. Mr. Lewis merely outlined the same area in which the 18 lots of Phase 2 were to be plotted. It includes the BMX trail system as well as the pond, so it does not accommodate those new features, as RCA has alleged, and because the agreement has not been amended and the 2018 plot does not conform to the development agreement, RCA cannot state a breach based on the denial of that application, and I would just also note that the section that they've cited, 1727A.509.5, is not a contractual obligation. Rather, it's a Utah statutory obligation that includes its own judicial review process within that statute that RCA did not comply with, and so that would not be a breach of the development agreement, but rather a statutory claim that RCA never attempted to bring and didn't do so within the applicable time period. Summit County would ask that the court affirm the district court's denial of the two motions to amend that RCA had filed. Thank you very much. Thank you. I only have one very quick question, and it's for Mr. Melrose. There was considerable talk today, especially from Summit County and in the briefs about Phase 2. Is Phase 1 not an issue anymore? Is your appeal predicated solely on Phase 2? Solely Phase 2, Your Honor. Yes, Phase 1 was constructed and completed. All right. Thank you. Very well presented in your briefs and in your arguments today. The panel's out of time, isn't it? Thank you very much. Thank you, Your Honor. Thank you. The case is submitted.